Alright, well, this is the case of Doar Properties in Wildwood, LLC v. Natatla and Atwar Natatla, 123-0012 and 123-0084. Our procedure is that we let the appellant go for 10 to 14 minutes. And then we ask questions and then the same as for the lineup. And finally, you get to finalize it. You've got before you Justice Ellis, you got Justice Nate House and Justice James Fitzgerald Smith. When you're ready, you can proceed. Thank you, Your Honor. May it please the court. My name is Kevin. Excuse me. My name is Kevin Bezetny. I represent the defendant appellant A. Ed Nahlawi. This appeal presents the issue of whether a person can be incarcerated due to his inability to pay a monetary sanction based upon a finding of indirect civil contempt. Respectfully, we suggest that the answer to that question is no. As this court's aware, after the issuance of mandates in two separate appeals taken by Mr. Nahlawi concerning the scope of permissible discovery in the underlying supplemental proceedings in January of 2020, January 18, to be precise, the plaintiffs filed a petition to set purge with regard to the underlying indirect contempt findings. It was requested to be simply a mathematical calculation and nothing more. Thereafter, after several months of settlement conference conducted by the circuit court, which unfortunately resulted in the case not being resolved by the end of May of 2021, during which I should point out that there was a significant amount of information, discovery and documentation that was requested, all of which was provided by Mr. Nahlawi in the context of that settlement conference. Thereafter, on July 5th of 2020, the circuit court entered an order determining the amount of the purge and setting that amount at $262,000 as of July 5th, 2022. However, the circuit court also, on its own, entered a provision in that order, the July 5th order, issuing a writ of body attachment for Mr. Nahlawi should he not pay this $262,000 sanction as of or by August 19, 2022. I should point out that in the petition to set purge, there was no such request for the issuance of the body attachment. Again, it was simply a request for a mathematical computation of the amount to be the purge amount. The writ of body attachment, which the circuit court entered on, issued rather on July 19th of 2022, indicated specifically that the sheriff is authorized to release the defendant upon payment of $262,000 cash bond. There were no other conditions indicated on the writ of body attachment other than the payment of $262,000. Motions for reconsideration were filed, supporting member random were filed, and a hearing was held by the circuit court before the circuit court on August 26th of 2022. At that time, the court took under advisement the motions for reconsideration that had been filed and requested a litany of different pleadings and documents that had been filed in the case, including the transcript from Mr. Nahlawi's citation examination, which had taken place back on February 6th of 2017. The circuit court was provided with all of the requested information, and ultimately, on December 20th, having taken the matter under advisement, it issued its memorandum of opinion and order. Unfortunately, it seems that the circuit court seemed to have ignored much of what information had been provided, specifically, and most importantly, perhaps, the citation examination of Mr. Nahlawi from 2017. The citation examination of Mr. Nahlawi's testimony was nowhere mentioned in the court's memorandum of opinion. As I pointed out earlier, the petition for the purge amount was never, a writ of body attachment was never asked for by the plaintiffs. It was sua sponte, granted or issued by the circuit court, and the language of the court's order from July 5th and the language of the writ of body attachment make it absolutely clear that the writ is based solely on the defendant's failure to pay the monetary sanction determined by the circuit court to be $262,000. By August 19, 2022. We point out that there is absolutely no evidence in this case that defendant has the ability to pay a $262,000 judgment or sanction. We point to his citation examination. We point to all of the documents that had been produced by the defendant and by various third parties, as well as to the affidavit of Mr. Nahlawi, which was also filed in the case. All of that information, all of that before the court made it absolutely clear that Mr. Nahlawi did not have the ability, did not have assets to pay $262,000 sanction. And furthermore, there was absolutely no evidence to suggest that his financial condition was the result of any wrongful or illegal acts on his part. As the court is aware, in Illinois, it is a defense to a court order to pay money based upon a finding of indirect civil contempt, where the failure is based on poverty, insolvency, or other misfortune, unless that situation was created by illegal or wrongful acts. Illinois law also makes clear that the defendant must prove that he does not have the money now, nor did he have the money, which he wrongfully disposed of, or assets wrongfully disposed of from which he could have paid any such money. The financial ability, or inability rather, must be shown by definitive and explicit evidence. We point to the fact that Mr. Nahlawi established his financial inability to pay any monetary sanction determined by the circuit court based upon, among other things, the citation examination which he gave, the host of documents that had been produced by Mr. Nahlawi throughout this case, and by various third parties, as well as his own affidavit. Collectively, these documents definitively and explicitly established that he did not have the ability to pay a $262,000 sanction, nor had he taken any steps to dispose of assets or other sources from which he could have paid a $262,000 sanction. Further, we point out that with regard to the issue of incarceration, it has been held and affirmed on appeal that incarceration is an appropriate sanction for indirect civil contempt, but only in those instances where it serves a coercive purpose to obtain compliance. In this case, the order of July 5, 2022, and the writ of body attachment are specifically linked to solely Mr. Nahlawi's payment of a $262,000 sanction. Illinois law is very clear. In order for contempt to be an appropriate sanction, or I'm sorry, incarceration to be an appropriate sanction or penalty with regard to indirect civil contempt, the defendant must have the ability to purge himself of the contempt. In other words, he must pull the keys to his jail cell. Incarceration is only appropriate if the defendant has the ability to comply. In this case, the evidence was clear based upon his affidavit, his citation examination, all of the documents, all the information that had been produced that the defendant did not have the ability to comply, did not have the ability to pay a $262,000 sanction. Therefore, since he did not have the ability to pay, and there was no evidence to even suggest remotely that he had dissipated assets, transferred assets, made him take in any illegal or wrongful action in order to put himself in that position, incarceration, even the threat of incarceration, was an inappropriate sanction or order issued by the court, even though it had not even been asked for by the plaintiffs. The writ of body attachment was fully improper in this case. And as we pointed out in our briefs, it is akin to a reinstatement of the long since past debtors prison. Here, Mr. Nalawi didn't have the ability to pay the $262,000. There is absolutely no evidence to suggest that he did. His own affidavit, citation examination documents show he didn't. We have produced throughout the course of this going back to 2016, all of Mr. Nalawi's bank records. There's absolutely no question, no doubt that he did not have the ability to pay a $262,000 sanction. Therefore, not only does he have an absolute defense to that order, but the imposition, even the threat of incarceration based upon his inability to pay was improper. And respectfully, we would ask that this court vacate the writ of body attachment and vacate those portions of the July 5th order entered by the circuit court, as well as the December 20th, 2022 memorandum opinion and order with regard to the imposition of the incarceration. That's enough. When is. This gentleman going to face it that he's simply got to address the 2 orders in October 18 in November to deal with the request for a citation in the supplemental citation. Why didn't he just do that? Well, your honor, we Mr. Nalawi has been producing documents over the course of this case. He produced those 2. He has produced documents since the mandate to answer my question. Did he do those 2? He has produced documents. Yes, he has produced documents since the mandate of this court is issued on September 27th of 2022, December 13th of 2000, 5 years. He made the decision respectfully your honor that he wanted to challenge the underlying orders of the circuit court through the friendly contempt proceeding, which he did. Unfortunately, he had the right to. Unfortunately, or fortunately, this court did affirm those decisions and did not vacate the finding of indirect civil contempt. And when the mandates came back, the plaintiff filed their motion to purge and the court made the calculation of what that amount is. But I'm not interested in that. Yeah, I want to know when he plans to answer all the questions the court asked. Not not this mumbo jumbo we're going through right now. Well, respectfully, your honor this is I mean, I understand about contempt and indirect civil contempt and I know there's an issue here, but it's not the real issue. The real issue is he has not addressed this and he has wasted the court's time and money for years. Respectfully, your honor, I believe that Mr allow me with the possible exception of the response to request number 20 of the original citation has produced every document in his possession custody of control, including documents with regard to entities that he has that are owned by his parents that he has been managing, including bank records, credit card statements of those entities where he is an authorized user. Council, are you are you go ahead. Yeah, thank you, Justice Smith, and I'm on my phone council because my computer is not working so I apologize if if I hope you can see me and everything. Council. Yeah, you mentioned writer 20, which I think was the subject of one of the discovery orders. I guess let's let's let me let me ask the question this way. Is it your position that you have fully complied with all discovery orders, or are you still have you still failed to comply with some of them. With regard to request number 20 there I would not say that there has been complete compliance with regard to the other requests, I believe that there has been your honor. Okay, but but 20 was one of the one of the cases that came up to us right was your honor and the if you recall your honor that is the request request 20, which asks for any and all communications between Mr. Nalawi or concerning Mr Nalawi relationship with 19 different entities and one individual. We have had, and do have a computer tech, who is going through all of the emails, the records, going back obviously many many years for trying to ascertain every document that is responsive to that particular request. It is as we've said before a voluminous task, but it is, it has, we have some, we're providing others, but with regard, everything else, all of Mr Nalawi's financials, as well as information regarding the, the entities that he has managed for his parents. All of those documents, every single one that's available has been produced, either by myself, or through his by through counsel for Mr Nalawi's parents. Okay, but but there is a still a failure to comply. I mean, it was the basis of one of the contempt orders that we affirmed. I was beginning to think what you were telling me is you've turned over everything. So you, you would not. You would not deny them that you are still that your client of course not you is still in contempt has still failed to honor one of the discovery orders. I cannot in good faith dispute that statement, Your Honor. No. Okay. Okay. All right. Nor would you dispute that, at least in theory, whether it was done correctly here or not, that incarceration would be an appropriate coercive sanction to compel those answers to compel that compliance. I know you say it wasn't done correctly here, but in theory, incarceration would be an appropriate coercive sanction to compel compliance with the discovery order. I would agree with that, Your Honor, that that is not the order, nor is it the writ of body attachment that we have. But if that had been, as I suggested to the circuit court, we would not be having this discussion. Okay. Is he going to answer this discovery? Yes, Your Honor. Yes. As I said, there is a computer forensics individual who is going through the remaining emails to ascertain everything that is responsive or potentially responsive to the last request, which is request number 20 of the original citation writer. Well, counsel, it's been a while since I've done discovery in circuit court, and I know there's been a lot of advancements in the maybe over 10 years since I've been there. Whether you have to turn over the hard drive, whether you can roll out production as it comes versus making them wait. I think it's fair to say your client is not going to be able to avoid compliance. I mean, it's been years. We cannot avoid compliance. You're absolutely correct, Your Honor. And that's why I've made it. I've tried to make it clear. We're not through this appeal. We're not trying to revisit or reconsider decisions, which this court has already made. Okay. All right. Thank you. Thank you, counsel. Thank you, Your Honor. I don't have any questions. All right. Then I don't know if it's Ellen or Stephen that's up. As the. Justice Smith, it's me, Kevin McCormick. I represent door properties. I appreciate it. Thank you, Justice, and I appreciate the panel's time here. As this panel is readily aware, and I know you're readily aware because you've authored multiple prior opinions, the three of you on these exact topics. One of those opinions was issued more than two years ago in March of 2021. Another was issued in December of 2021. And yet here we are still talking about the exact same issue that has already been litigated. Justice Ellis, to go to your point, and Justice Smith, you had also tendered this question to counsel. First and foremost, nothing has been produced in response to paragraph 20 of the original citation writer. That is confirmed by the trial court in both the memorandum opinion of December of 2022, as well as in the July 5th of 2022 order, as well as acknowledged by counsel in the January 6th, 2023 hearing that's part of this record. It is abundantly clear that compliance has not occurred. And you just heard counsel himself admit that they're trying to comply without telling anyone, whether it's the panel here or me or anyone else, when compliance would actually occur. This is for a citation that was served over eight years ago. And we're talking about an appellate court decision that Justice Ellis, you wrote and Justice House and Justice Smith, you concurred with from March of 2021. So the defendant debtor here knew exactly what the obligations were, knew exactly what the sanction would be for failing to comply. And yet, 28 months now, since this panel already said you must comply, and here is the sanction which we affirm, he still hasn't done that. And the problem here is that there's an error in logic that's being argued. You heard counsel say that the issue is incarceration due to failure to pay. That's not the issue. And Justice Ellis, you just hit it on the head. This is incarceration due to a failure to comply with the court's orders and to produce these records. And that's always been the case. In this court's prior decisions, you've pointed out that the obligation to produce the records was there. These were appropriate discovery requests in a post-judgment proceeding and that the defendant needed to produce them. And you affirm the sanction of $100 per day for every day that he failed. The sanction is based on his failure to comply, has nothing to do with his inability to pay. More importantly, I'm struggling to understand why we're even having to re-argue some of these issues when they've been clearly resolved by the three of you twice over. And more importantly, there was no effort in the trial court to actually raise any of these arguments in response to the motion to set the purge, which is exactly what we are here to discuss. That motion was filed. No response was written. The July 5th order was issued by the trial court in the accompanying writ of attachment. A failure to pay a sanction is always going to be accompanied by a writ of attachment because there is no other enforcement mechanism. And I've heard nothing from counsel, either throughout all the years we've been litigating this or today, as to what else was going to compel this defendant to actually produce these records. Oddly enough, Justice Smith, you asked the question, when were documents produced? And you just heard counsel say, well, the first time any documents were possibly produced in response was September 27th of 2022, which is nearly three months after the July 5th order entering the sanction amount and more than two months after the writ of attachment was issued. So clearly, that was finally what spurred on some effort of compliance. But yet, counsel admits, not full compliance. And I will point out to the panel that in December 2022 order, the trial court acknowledged there was no compliance with either paragraph 20 or the supplemental citation writer. And that's what this is all about. Mr. McCormick, I don't think anybody here is going to dispute that incarceration is a possible motivation tool and a legal motivation tool to get discovery. I think the issue in this case, however, is that he is being incarcerated because he did not pay a sanction that was imposed because he didn't comply. And there's evidence in the record that he had the inability to pay that monetary sanction. And the question is, under the law, can a person be incarcerated for contempt when there's evidence they don't have the ability to pay? And that's really, I think, what we're talking about. In Justice House, I completely understand and agree that's what we're talking about. And Chad said, OK, I'm going to give you a week to produce it, otherwise I'm going to have you incarcerated. You know, we're looking at something different, aren't we? As opposed to this, I'm going to fine you $100 a day. And if you don't pay the $200-whatever-thousand, you're going to be locked up. That's a different situation. In one, he could hold a key if he complied. In the other, if he doesn't have the $250, he doesn't have the key to the jail cell. Well, I understand, Justice House, your statement. However, you have to remember that this is a citation that was served over eight years ago. Paragraph 20 and the obligation to respond to it was the legal obligation. And he could have been locked up seven years ago. But that's not what happened. A fine was imposed and he's locked up for not paying the fine. And that's the issue that we have. The fine was not imposed because he didn't pay. The fine was imposed because he still refused to comply with the court's orders. I'm sorry, he's locked up because he didn't pay the fine. Well, he's locked up because he didn't produce the records. Counsel, can I make the same point that I think Justice House is making, but maybe coming at it from a different angle? So Mr. Nalawi got picked up and thrown in Cook County Jail a few probably a couple of months ago now. So he's sitting there in jail. And let's say from his jail cell, he produced every single document responsive to citation writer number 20. He did everything, admittedly late, but he purged himself of all contempt by turning over every document. Under the terms of the court's order, he would still remain locked up because the purge that was put in that order was not complying with the discovery. It was paying $262,000. So even if he gave you everything you've been wanting all these years, he would still be locked up, frankly, probably forever because he's never going to come up with that amount of money. Is that a proper use of civil contempt? Well, first off, it is a use and it is unfortunately an occurrence. And I say in my response, the Mesro case, as well as the other decisions in which the incarceration for failure to comply is nevertheless reasonable under the law. And under these circumstances, this wasn't this was a conscious decision to refuse to pay, to refuse to produce. It wasn't a conscious decision as far as refusal to pay over all these years. It was a recalcitrance to produce these records, knowing that there was a sanction. And so from my perspective, Justice Ellis, then if we take the logic that's being presented, then no sanction could ever be enforced because all it would require somebody coming forward and saying, well, I've litigated this to the death. I've come before the appellate court on multiple occasions. I've still refused to produce. Now the sanction amount has grown to such a large extent. Well, I can't pay that. That seems to fly in the face to me as to the purpose of contempt, which is to have forced compliance of the contempt nor. And so to weigh that, it seems to me silly that you could wait it out and then say, I don't have the money. When I'm asking for documents that go to the heart of the issue, which is, do you in fact have the money? Counsel mentioned his citation examination is evidence of his insolvency. That citation examination occurred in 2017 prior to any production of records in pursuant to paragraph 20. And more importantly, prior to the supplemental citation writer even being issued. And so to say that a citation examination and that occurred before any of these documents were produced. That's the the entire evidentiary limit as to whether or not he's insolvent. Belies the fact that these were discovery requests that were approved to be issued and he was obligated to produce them. So in effect. The defendant is saying, well, I'm telling you all that I'm insolvent. I'm refusing to give you any records that go to the issue because you have to take my word on it that I am insolvent. You know, that miserable case you cited is a lot different from this one. The miserable case that got the husband was locked up because he refused to pay alimony and attorneys. Let's move this along. We're getting off the beaten path here. Let's finish this up and let the other side have their final word, because I think Kevin now knows what he has to do or he himself might be on the list. Kevin, go ahead. Thank you, Your Honor. I think Justice House and Justice Ellis. Have articulated the issue. Correctly, there is an issue with with production of documents. I'm not going to argue that I'm not going to dispute that. That is not the purpose of this appeal. The issue of this appeal, it may not be directly, but indirectly, it says what has to be done. And if I understand now done immediately, he's going to jail. Understood justice comes back before me again. I'll be looking at you too. I appreciate that. And we certainly don't want that to be the case. So he's got a simple solution and it should be done within, I'd say, a week. So you got very little options except to produce those documents immediately. Very well, Your Honor. Is there a is there a mechanism to report back to the court when that production is. Complete I don't want the Your Honor to be motion at any time showing you've complied. Counsel counsel, we will be issuing an opinion in this case and we'll we'll we'll resolve the matter. I think Justice Smith is speaking more holistically to the whole case, including in the circuit court. I think the message is your client is out of time and he is running quickly out of options, regardless of whether the contempt finding and the writ of body attachment was proper under these circumstances. And that's what we're going to decide very shortly. But regardless, either way. Time is running out and your client needs to understand that. Very well, Your Honor, I, I will make sure that that message is conveyed in exactly those terms. All right, thank you both. You both did a nice job. Unfortunately, you got a rough job, Kevin. That's that's not a case I'd want to be representing your client on. But that's that's the way it falls to Kevin's today. Yeah, I believe I know who he was referring to. Just do your best to resolve this quickly. Very well. Thank you both. Thank you very much. Your Honor. Thank you.